UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

George H. Kalberer,

Plaintiff

v.

William Palmer,
Tim Dolan,
John Does 1-10 or more,
Joan E. Gray,
James Nalepka,
Yoshiko Hapke,
Deirdre Meade,
Sheila Dalton,
Tony Yanni,
Angel Diaz,
HCMC John Does,
Lee B. Nelson,
Steven Hoeg,
Mark Taylor,
Elliot Knetsch,

Defendants



COMPLAINT

The Plaintiff, George H. Kalberer, for his Complaint against the Defendants herein, says as follows:

INTRODUCTION

1  This case arises out of the retaliatory and unlawful assault, seizure and detention of George H. Kalberer ("Kalberer"), a citizen of the United States, who was assaulted and seized, and taken from Room 130 of Minneapolis City Hall and detained without probable cause and in violation of the rights guaranteed to him by the law of Minnesota and by the Fourth, Fifth and/or Fourteenth Amendments of the United States Constitution. Additionally, upon information and belief, it is alleged that the baseless incarceration of Kalberer upon the pretext that he was mentally unstable was the result systematic surveillance by the government and its attempt to suppress speech activities critical of the government's repressive anti-free market polices, police misconduct, and in support of the Hippocratic Oath and Constitutional rights. As such, the actions taken against Kalberer violated his fundamental right to engaged in political speech guaranteed by the First Amendment to the United States Constitution.

2  Insofar as the unlawful, assault, seizure and/or detention of and retaliation against Kalberer were caused and/or carried out by Minneapolis police officers or other persons acting under the color of state law, Kalberer brings this lawsuit pursuant to 42 U.S.C. Section 1983 to vindicate his federal rights as

guaranteed by the First, Fourth and/or Fifth Amendments, made applicable to the States by the Fourteenth Amendment.

3   Insofar as the unlawful assault and seizure and/or detention and retaliation against Kalberer were caused and/or carried out by agents of the federal government, Kalberer brings this lawsuit directly under the First, Fourth and/or Fifth Amendments. See, e.g. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (holding that a violation of the Fourth Amendment protection against unreasonable searches and seizures by federal agent acting under color of his authority gives to a cause of action for damages consequent upon his unconstitutional conduct).

4   Kalberer also brings a state law false imprisonment action against such Defendants as instigated, requested, directed and/or carried the assault, arrest and detention of Kalberer without legal justification.

## JURISDICTION AND VENUE

5   This Court has subject matter jurisdiction under 28 U.S.C. Section 1331 and 1343, for those claims seeking redress under the laws and statues of United Stated for the deprivation of rights secured by the Constitution and the laws of the United States. This Court also has subject matter jurisdiction over the state law claims under 28 U.S.C. Section 1367.

6   Venue properly lies in the District of Minnesota under 28 U.S.C. Section 1391(b), as a substanial part of the events giving rise to this action occurred within this District.

## PARTIES

7   Plaintiff Kalberer ("Kalberer") resides resides within Rice County, State of Minnesota. He is a former member of the Chicago Board Options Exchange, a former member of the Chicago Mercantile Exchange, and a former employee of the Chicago Mercantile Exchange, Richardson Securities of Canada, Drexel Burnham Lambert, Donaldson Lufkin Jenrette, and the Star Tribune.

8   Defendant William Palmer ("Palmer") is a police officer for the Minneapolis Police Department, 350 south 5th Street, Room 130 Minneapolis, MN 55415-1359. He is sued in his individual capacity. In all respects set forth in this Complaint, Palmer acted under the color of the laws of the State of Minnesota.

9   Defendant Tim Dolan ("Dolan") is a police officer for the Minneapolis Police Department, 350 South 5th Street, Room 130, Minneapolis, MN 55415-1349. He is sued in his individual capacity. In all respects set forth in the Complaint, Dolan acted under color of law of the State of Minnesota.

10   John Does 1-10 or more are individuals whose identities are yet unknown and who participated in causing and/or carrying out the unlawful assault, seizure and/or detention of Kalberer, the surveillance of Kalberer and on going efforts to instigate a new petition for commitment. Upon information and/or belief, John Does 1-10 include, but may not be limited to, officers and agents of the Minneapolis Police and the Golden Valley Police and the federal, state, county and city government and HCMC staff involved in the surveillance of Kalberer and in on going efforts to instigate a new petition for commitment. A court order must be served upon law enforcement and HCMC to discover the name of each and every person who participated in causing and/or carrying out the unlawful assault, seizure and detention of Kalberer and/or involved in the surveillance of Kalberer and in on going efforts to

instigate a new petition for commitment.

11   Defendant Joan Elizabeth Gray ("Gray") is a registered nurse employed by Hennepin County Medical Center, 701 Park Avenue, Minneapolis, MN 55415. She is sued in her individual capacity. In all respects set forth in this Complaint, Gray acted under the color of the law of the State of Minnesota.

12   Defendant James Nalepka, ("Nalepka") is a licensed nurse employed by Hennepin County, 701 Park Avenue, Minneapolis, MN 55415. He is sued in his individual capacity. In all respects set forth in this Complaint, Nalepka acted under the color of the law of the State of Minnesota.

13   Defendant Yoshiko Hapke, ("Hapke") is a licensed psychotherapist employed by Hennepin County Medical Center, 701 Park Avenue, Minneapolis, MN 55415. She is sued in her individual capacity. In all respects set forth in this Complaint, Hapke acted under the color of the law of the State of Minnesota.

14   Deirdre Meade, ("Meade") is a social worker employed by Hennepin County Medical Center, 701 Park Avenue, Minneapolis, MN 55415. She is sued in her individual capacity. In all respects set forth in this Complaint, Meade acted under the color of the law of the State of Minnesota.

15   Sheila Dalton, ("Dalton") is a RN Clinical Coordinator, Inpatient Psychiatry employed by Hennepin County Medical Center, 701 Park Avenue, Minneapolis, MN 55415. She is sued in her individual capacity. In all respects set forth in this Complaint, Dalton acted under the color of the law of the State of Minnesota.

16   Defendant Tony Yanni, ("Yanni") is a Disability Evaluation Coordinator employed by Hennepin County Medical Center 701 Park Avenue Minneapolis, MN 55415. She is sued in her individual capacity. In all respects set forth in this complaint Tony Yanni acted under the color of the law of the State of Minnesota.

17   Defendant Angel Diaz, ("Diaz") is a Patient Advocate employed by Hennepin County Medical Center, 701 Park Avenue, Minneapolis, MN 55415. She is sued in her individual capacity. In all respects set forth in this Complaint, Diaz acted under the color of the law of the State of Minnesota.

18   Defendant HCMC John Doe, ("Richard") xxxxxx, has a last name known to HCMC, Hennepin County Medical Center, 701 Park Avenue, Minneapolis, MN 55415. Richard was an actor, and/or actor/patient in the HCMC charade purporting to a real patient at HCMC, who on the morning of 6/23/2011 attempted to instigate an assault upon Kalberer. Richard is sued in his individual capacity as an actor/patient in the HCMC charade. In all respects Richard acted under the color of the laws of the State of Minnesota.

19   Lee B. Nelson, ("Nelson") is an attorney for the State of Minnesota Unemployment Benefits Program (DEED) Department of Employment and Economic Development, 1st National Bank Building, 332 Minnesota Street, Suite E200, St. Paul, MN 55101-1351 who might have been influenced by HCMC and/or police John Does and who wrote a false Minnesota Court of Appeals Brief on March 11, 2013 (No. A12-2169). He is sued in his individual capacity. In all respects Nelson acted under the laws of the State of Minnesota.

20   Steven Hoeg, ("Hoeg") is the branch manager for the Etrade's Minneapolis, MN office at 50

South Sixth Street, Minneapolis, MN 55402. He instigated police John Does to set up the assault, seizure, and detention of Kalberer on 6/22/2011. He is sued in his individual capacity. In all respects Hoeg acted under the laws of the State of Minnesota.

21   Mark Talyor, ("Taylor") Director of Public Safety, 300 West Fifth Street, Northfield, MN 55057. Talyor is sued in his individual capacity. In all respects Taylor acted under the color of the laws of the State of Minnesota.

22   Elliot Knetsch, ("Knetsch") City of Northfield Attorney and Prosecutor, City Hall, 801 Washington Street, Northfield, MN 55057. Knetsch is sued in his individual capacity. In all respects he acted under the color of the laws of the State of Minnesota.

## FACTS

### The Assault and Seizure of Kalberer

23   On the June 22, 2011 at 8:20 AM Kalberer was peacefully walking to his 8:30 AM Court Date in Minneapolis City Hall when he entered Room 130 to drop off two (2) documents. Kalberer was the Plaintiff the State of Minnesota, County of Hennepin, Fourth Judicial District, Conciliation Court Hearing Case No. 27-CO-3049 scheduled to start at 8:30 AM in Room 320. (See Exhibit D)

24   Kalberer was assaulted and seized by a John Doe who by force grabbed Kalberer, slammed Kalberer to the floor, jumped on Kalberer and handcuffed Kalberer against his will.. Kalberer's back was injured. For more details see Kalberer's letter of July 4, 2011 to Palmer (See Exhibit F) and Palmer's 6/22/2011 APS Report (See Exhibit B).

25   Upon information and belief, the John Doe who assaulted and seized Kalberer, and other John Does who transported Kalberer to HCMC and John Does in Golden Valley, MN were acting and/or at the request and instigation of Dolan and others in retaliation for his free market political views Kalberer's belief in Constitutional Rights and his criticism of police misconduct.

26   Confronted with the show of force, Kalberer asked the John Doe who assaulted him to first permit him to appear in Room 320 where his lawsuit was pending before leaving City Hall.. The John Doe refused. The seizure of Kalberer caused him to default on his own Summons to Appear and resulted in the dismissal of his lawsuit against Etrade. The John Does are sued for the $1275. loss.

27   The aforesaid assault, seizure was carried out without informing Kalberer of his legal rights, without informing him of any charge or complaint against and without providing him with any basis or authorization for his arrest and detention.

28   The John Doe then turned Kalberer over to two (2) other John Doe police officers who had police officers who had police uniforms on. The John Doe that assaulted and seized Kalberer did not have a police uniform on. The next two (2) John Does transported Kalberer to HCMC in the caged portion a police vehicle. Kalberer was transported to Hennepin County Medical Center against his will. This deprived Kalberer of his liberty.

29   At the time of the assault, seizure, transportation and detention of Kalberer, none of the

defendants had probable cause to believe that Kalberer had committed any crime, nor did any Defendant have probable cause to believe that Kalberer posed a danger to himself or others, nor did any Defendant have any other legitimate or lawful basis to seize, arrest or detain him.

## THE DETENTION

30  Kalberer was detained against his will at HCMC at 8:55 AM 6/22/2011. (See Exhibit A, page 1)

31  On the morning of 6/23/2011 Kalberer was verbally accosted by HCMC John Doe "Richard" who attempted to instigate an assault. Richard was an actor and/or an actor/patient posing a real patient. Richard had been briefed about me and the Slawsons the corrupt Teamsters who have been expelled form the Teamster Union and banned from ever becoming Teamster Officials for life. The only the reason that I was able stop Richard for assaulting me was that the previous nite I had a single room which I ran into and closed the door to protect myself from Richard. HCMC was supported the planned assault and later that day HCMC demanded that Richard be my roommate. Discovery is necessary to determine Richard's last name. HCMC has omitted Richard and the threatened use of force and violence against me from their 100 page report. (See Exhibit A) I was billed $22,215.08 (See Exhibit C) for my nine (9) day false imprisonment, if Richard had assaulted me it could have been a six (6) month sentence.

32  At no time did Kalberer threaten to do harm to Richard or himself and/or anyone else.

33  HCMC and the John Does who assaulted, seized, detained and transported Kalberer to HCMC wanted Kalberer to lose both his Golden Valley, MN home/office residence and his State of Minnesota Unemployment Benefits which was most of my income at that time and necessary for rent payments in Golden Valley, MN and/or to obtain a new residence. At 9:25 AM 6/23/2011 Tony Yanni, Disability Evaluation Coordinator asked/demanded/requested me to sign "the State Medical Review Team's application for disability for purposes of obtaining Medical Assistance." (See Exhibit A page 13) If had signed the form Yanni requested me to sign I would have lost State of Minnesota Unemployment Benefits because I would have been legally "disabled" and unable to work.

34  In August 1973 HCMC disabled my mother by Mildred Kalberer by asking her to have a lung operation. This immediately disabled my mother who was never able to return to her job as the school librarian at the Edina Creek Valley School and who later died in HCMC on or about January 24, 1974. HCMC violated the Hippocratic Oath by shortening my mother life. It is not and was not in the interests of my mother or myself to be disabled.

35  HCMC asked me to submit to "follow up film studies" for a lung operation but I was "currently not willing to cooperate with this." (See Exhibit A page 31) I am trying to get copies of the X-Rays to discovery if they are real or phoney like "Richard." Discovery is needed. I can not lose control over the my right to refuse a lung operation, which would have happened if I was committed. Kalberer believes in the sacredness of human life, the Hippocratic Oath and the Constitutional right to life and liberty.

36  HCMC and the John Does have replaced the sacredness of human life , the Hippocratic Oath and constitutional rights with outrageously high medical bills and life/death police state power. At 1:06 PM on 6/23/2011 Dalton, made an entry in the HCMC log. On page 15 of the 100 page HCMC report (See Exhibit A) Dalton, admits that Kalberer "is concerned about being locked up against wishes and against his constitutional rights". HCMC considers people who believe in constitutional

rights mentally ill and in need of "clinical, therapeutic and supportive service needs: MMPI, Neuro psych ...Medications". (See, Exhibit A, page 15)

37   In a report executed on June 27, 2011 Nalepka claimed in the last line of page 4 and the first line of page 5, "Pre-Petition Screening believes the patient's current condition is such there is a risk of physical harm to himself and possibly others, if he would be released." (See Exhibit E)  HCMC Pre-Petition Screening and Nalepka made this baseless allegation at the request and/or instigation of one or more John Does.

38   On or about June 27, 2011 Gray, Nalepka and Mead filed petition for a Jarvis Order and the Civil Commitment of Kalberer.  Some of the records related to this petition have been withdrawn, lost, misplaced, and/or stolen.  HCMC has not been willing to provide this a complete copy of these records and the X-rays, although they did provide the 100 page log (Exhibit A).  The available petition records are submitted as Exhibit E.

39   The persons formally responsible for the June 27, 2011 Petition were Defendants Gray, Nalepka, and Mead, who acted under the color of state law.

40   Defendants Gray, Nalepka, and Mead lacked probable cause to make the allegations they set forth in the June 27, 2011 Petition against Kalberer.

41   On information and belief, Gray, Nalepka, and Mead filed the June 27, 2011 Petition at the request and/or instigation or one or more John Does, who also lacked probable cause to file the petition against Kalberer.  Indeed, the John Does sought to label Kalberer as mentally ill and continue his incarceration and commitment because of their desire to suppress and chill Kalberer's views critical of views critical of government amorality, life/death police state power, and police misconduct and in support of free markets, the sacredness of human life, constitutional rights and the Hippocratic Oath, and the June 27, 2011 petition constituted retaliation against Kalberer for his constitutionally-protected speech.

## THE STATE COURT ORDERS KALBERER RELEASED

42   On June 30, 2011 my attorney Elizabeth Rosholt Winden and myself attended a 25 minute hearing in Hennepin County Government Center.  We met with Cathrine Carlson Psy. D.  Cathrine Carlson Psy D recommended that the HCMC commitment petition be dismissed because there was "no evidence of harm to self or others."

43   Plaintiff Kalberer returned to HCMC collected his personal property, checked out and then returned to his residence at 810 North Lilac Drive, #216, Golden Valley, MN 55422 on June 30, 2011.  HCMC was still pursuing the Jarvis Order and the Petition for a Civil Commitment and a July 6, 2011 trial was scheduled.

44   On July 5, 2011 HCMC withdrew the Petition for a Jarvis Order and the Petition for Civil Commitment.  If Kalberer had been committed, he would have lost everything literally, all of his State of Minnesota Unemployment Benefits, and his Golden Valley, MN  Residence which he did in fact lose.  Kalberer also would have lost all of his personal property if he were locked up in HCMC and not able to personally find a new residence and move his property.  That fact that Kalberer's mother died in HCMC on or about January 24, 1974 pursuant to a lung operation and HCMC is interested in performing a lung operation upon Kalberer has added to Kalberer's emotional distress, emotional pain,

and suffering.

45   As a result of the action of the Defendants as described herein, Kalberer has sustained pecuniary and non-pecuniary losses, a lower back injury, emotional distress including emotional pain, suffering, inconvenience, mental anguish and the loss of enjoyment of life and loss of reputation.

## SURVEILLANCE OF KALBERER

46   The June 30, 2011 State Court release of Kalberer from false imprisonment at HCMC secured Kalberer's freedom. However it has not stopped law enforcement and HCMC from surveillance and efforts to instigate a new incarceration and a new petition for commitment because of Kalberer's views critical of the government amorality, police misconduct and in favor of free markets, the sacredness of human life, the Hippocratic Oath and constitutional rights.

47   On information and belief, at the request and/or instigation of HCMC and one or more John Does, Balderson Properties canceled Kalberer's lease of nearly four years at 810 North Lilac Drive, #216 Golden Valley, MN or or about July 5, 2011.

48   Kalberer needed money and income to secure a new residence. HCMC then stepped up efforts to collect the $22,215.08 HCMC bill (See Exhibit C) which if paid by Kalberer would have had the effect the effect of depriving Kalberer of the money and income needed for a new residence.

49   HCMC sent Defendant Diaz our to Kalberer's residence out Kalberer's 810 North Lilac Drive, #216, Golden Valley 55422 to collect the $22,215.08 HCMC bill in August 2011. (See Exhibit D) From an economic point of view HCMC destroys all of the psych patients that are imprisoned there. You can not work when you are in the HCMC psych prison and when you get out you will have HCMC bills that would drive any reasonable person to the brink and you may be faced with the loss of your residence.

50   Defendant Diaz taped an envelope with a letter (Exhibit D) to the door of Kalberer's home/office residence. The last line of the letter says, "PD: If this person doesn't live here also let me know to remove this address from the Data Base." Upon information and belief Defendant Diaz and one or John Does were working to speed the loss of my residence and instigate and new a incarceration and petition for commitment. HCMC and the John Does would benefit if Kalberer lost his residence and income because these events would serve to make Kalberer more vulnerable to the on going efforts for a new incarceration and petition for commitment. A female John Doe in Room 130 of City Hall on 6/22/2011 called that "help". People that lose there residences and income are frequently killed the by police because view the police view "desperate people " as a risk to the community.

51   Defendant Diaz's request for me to let her into Kalberer's home/office residence and/or met her in some other place to sign an Medical Assistance Application, was based on page 13 of HCMC's 100 page log report (See Exhibit A) really a request to sign a State Medical Review Team's application for disability. Tony Yanni asked me to sign such a form on 6/23/2011 at 9:25 AM. This form if signed by me would have stopped State of Minnesota Unemployment Benefits which were necessary to secure a new residence.

52   Kalberer did not let Defendant Diaz into his home/office residence and/or sign or her disability form. Upon information and belief HCMC and one or more John Does requested that the State of Minnesota stop Kalberer's Unemployment benefits. For two to three years  Kalberer received State of

Minnesota Unemployment Benefits and during this period Kalberer filled out a computer form each and every week on a State of Minnesota computer. At approximately the same time Defendant Diaz came out to my home/office residence to have me sign a Minnesota disability form someone advised the State of Minnesota that I was disabled and could not work. For the first time in about three years the State of Minnesota started asking question about being medically disabled on the weekly computer form. I was not medically disabled. I said that on time computer form and the State of Minnesota Unemployment Benefits contained at that time.

53  In 2012 however the State of Minnesota unlawfully stopped my Unemployment Benefits after I moved to Michigan on May 22, 2012. My unemployment benefits should have been transferred to Michigan by law. Lee B. Nelson, the top attorney for the State of Minnesota Unemployment Benefits wrote a blatantly false State of Minnesota Court of Appeals Brief Case No. A12-2169 on March 11, 2013. Kalberer has submitted a copy of this brief as Exhibit K. Kalberer has submitted a copy of his Reply Brief of March 15, 2013 as Exhibit L.

54  In the first sentence of the second paragraph of page 5 of Nelson's Brief, he states, "There is no such thing as transferring benefits to another state". This is simply not true. On information and belief, Nelson filed the false court brief at the request and/or instigation of one or more John Does who sought the incarceration and commitment of Kalberer because of their desire to suppress and chill's Kalberer's views critical of government amorality, life/death police state power, and police misconduct and in favor of free market markets, the sacredness of human life, constitutional rights and Hippocratic Oath. Nelson's false court March 11, 2013 court brief constituted retaliation against Kalberer for his constitutionally-protected speech.

55  Etrade acted exacted the same as Nelson. Etrade lied about 5 in the money SPY $133 Apr 16 2011 Put options that had to be excised under CBOE automatic exercise rules and pursuant to a verbal agreement that I will the CBOE trading desk and instead simply stole $1205 and or intentionally had my options expire worthless which had the same effect as stealing $1205 from my Etrade Brokerage account on April 18, 2011. In wrote a letter to Etrade about this on May 7, 2011 which is submitted as Exhibit J and the Etrade lawsuit is submitted as Exhibit I.

56  On information and belief, Etrade at the request and/or instigation of one or more John Does, stole and/or intentionally caused to expire worthless my 5 in the money 133 Apr 16 2011 Put Options. Indeed the John Does sought to label Kalberer as mentally ill because of their desire to suppress and chill Kalberer's view critical of government amorality, life/death police state power, and police misconduct and in support of free markets, the sacredness of human life, constitutional rights and the Hippocratic Oath. The court order requested in paragraph 10 is necessary is discover the name of all of the John Does who communicated with Etrade, Lee B. Nelson, Balderson Properties, and HCMC.

57  On April 6, 2012 Kalberer was returning to his residence in Northfield, MN after filing a law brief in a Federal Age Discrimination Lawsuit against the Teamster Union and Star Tribune in Federal District Court in St. Paul, MN Case No. 12-814. Kalberer was stopped in downtown Northfield, MN by two Northfield, MN police officers. Parts of what the Northfield Police Officer said made no sense what so ever. The John Doe suggested that Kalberer should see a Doctor to get permission to drive without a seat belt. This was a baseless psych allegation that was made without probable cause.

58  Kalberer wrote two letters to Mark D. Talyor, Director of Public Safety about this matter. Kalberer's letter of April 17, 2012 is submitted as Exhibit O. Kalberer requested a copy of the audio video tape and related police communications. Taylor refused to sent Kalberer a copy of the audio

video tape and went to work on a cover up. He denied the baseless psych allegation and bizarre statements of the officer in a letter to Kalberer and then he went work erasing key parts of the tape. Kalberer also wrote Judge Christine Long and asking for a copy to the audio video tape and related police communications.

59  The case which was Court file No. 66-VB-12-1434 went to trial on or about July 6, 2012 in Rice County Court. When the trial started Knestrich was allowed to evade discovery on the audio tape disc by claiming that he had never received a copy of two letter sent to Mark D. Talyor and/or the one letter sent to Judge Christine Long asking for discovery on the audio video tape disc and related police communications. Elliot Knetsch is not credible here.

60  When the trial started Knetsch played the audio tape which had large parts missing and presumably erased/destroyed by Talyor and/or Knetsch. However "Feds want delusional" was still on the tape. Kalberer repeated the "Feds want delusional" in court a few times and it is undisputed that "Feds want delusional" was on the audio video tape disc and because it was repeated by Kalberer in court is thereby part of the official transcript. It sounded like the John Doe was getting orders over the police radio to make baseless psych allegations from some powerful Fed John Doe that could order anything with out regard to merit or law. Discovery is necessary to determine if it is the same Fed John Doe called Etrade, Nelson, HCMC and Balderson Properties. The Fed John Doe should be discovered and served pursuant to paragraph 10.

61  The Northfield John Doe did make a baseless psych allegation in court, but he was not able to cite any conduct and/or statement by Kalberer in support of his baseless psych allegation which he admitted was personal opinion. Not one fact was stated by the Northfield cop because none exist. The audio video tape also suggests that I was suspected of having a gun in my left hand. I have never owned a gun in my life.

62  At the end of the Rice County Courthouse July 6, 2012 Trial I asked the court for a copy of the audio video tape. The Judge agreed and asked Knetsch to give me a copy of the audio video tape. Knetsch needed to do some more Rosemary Woods style tape erasing and he refused to give me a copy. Knetsch demanded that I mail a written request for the audio video tape to his office in Eagan. He was not willingly to let me sign a letter and give it to him in court. Knestsch later demanded that I pay for the tape in cash since he could not accept a check for $5. After a about one month and a letter and several emails and a trip to Eagan I did finally get a copy of the audio tape disc with even more parts erased.

63  When the John Does are making baseless psych allegations and claiming that people have guns that do not have guns no one in America is safe.

64  In Golden Valley, MN on or about September 24, 2011 Golden Valley Police Officer Zarrett shot and killed and Kathrine Gordon, 58 year old Christian Lady, who had three (3) children, and no criminal record what so ever just outside of my Sprint telephone store at 11300 Wayzata Blvd, Minnetonka, MN 55305 on Highway 394. No one believes that Kathrine Gordon had a gun. Even the Edina police who took Kathrine Gordon to a Minnesota Mental Health Facility in July of 2011 admitted that she did not have a gun when they searched her car and possessions. (See Exhibit P) Zarrett had previously Tasered Mrs. Brown for talking on a mobile phone. It appears from the 6/22/2011 APS report (Exhibit B) and the HCMC 100 page report (Exhibit A) that I have many Golden Valley John Does making baseless psych allegations about me and that I am at risk just as Kathrine Gordon was. I did not believe that any Golden Valley Police officer is trustworthy. The Police

can not Police themselves.

65   On October 16, 2011 I paid my Sprint bill at the 11300 Wayzata Blvd. Location and personally reviewed the State of Minnesota Highway Department Video Camera angles of Highway 394. Because discovery on paragraph 10 should reach some Golden Valley, MN police office and since there is evidence from a Rice County Court of some sort of powerful Fed giving orders on the police radio to officers like Zarrett, I believe that the interests of Justice would be served for the Federal Court to review the State of Minnesota Highway Video Tapes of Zarret shooting Kathrine Gordon. Based on what happened in this case with Etrade, Lee B. Nelson, HCMC, Balderson Properties, the Northfield, MN Police and in Minneapolis City Hall on 6/22/2011 there does not appear to be anyone in Minnesota law enforcement willing to make a stand against government amorality, police misconduct, and in support of free markets, the sacredness of human life, constitutional rights and the Hippocratic oath. The authority of the Federal Court is needed.

66   On information and belief, Kalberer attracted the attention of one or more John Does acting as agents of the government, because he wrote letters protesting the repressive anti-free market views of the Minneapolis Police and police misconduct in general and in support of constitutional rights and filed a lawsuit against Etrade.

67   On information and belief, Kalberer was unlawfully assaulted and seized because of, and/or in retaliation for his free market political views, and his support of constitutional rights and his criticism of police misconduct and that the allegation that he was mentally ill was a pretext designed to suppress and chill his constitutionally-protected speech and to defame and discredit him and his beliefs. A seizure motivated by a intent to retaliate against and suppress conduct protected by the Constitution represents willful and wanton misconduct, malice and/or bad faith so as to entitle him punitive damages. The retaliatory actions against Kalberer served not only to silence Kalberer, but chill the speech of other citizens that believe in free markets, constitutional rights and the Hippocratic oath and who express concern and criticism about police misconduct.

68   Kalberer will, as allowed by the First Amendment, continue to engage in speech and expression critical of government polices with which he disagrees, and as a result faces continuing threat of the same kind of retaliation from others and agents of the federal and state and county and city government that has resulted in his involuntary, unjustified and illegal seizure and detention in June 2011.

## FIRST CAUSE OF ACTION

Unlawful Seizure under Four Amendment – Color of State Law

69   The allegations of the foregoing paragraphs are re-alleged as if set out in full.

70   The actions of Defendants, as alleged herein, deprived Kalberer of his constitutional rights rights to be free from unreasonable seizure and not to be deprived of his liberty without due process of law, guaranteed by Fourth, Fifth and Fourteenth Amendments.

71   The actions of Defendant Palmer – as well the actions of one or more John Doe Defendants who acted in concert with them – were committed under color of state law as to give rise to liability under 42 U.S.C. Section 1983.

72   As the proximate result actions, Kalberer has sustained the damages previously set forth.

73   Pursuant to 42 U.S.C. Section 1988 Kalberer is entitled to attorneys' fees and costs, including expert fees, incurred in bringing the claims alleged in this count.

## SECOND CAUSE OF ACTION

### Unlawful Seizure under the Fourth Amendment - "Bivens" Claim

74   The allegations of the foregoing paragraphs are re-alleged as if set out in full.

75   The actions of Defendants, as alleged herein, deprived Kalberer of his constitutional rights to be free from unreasonable seizure and not to be deprived of his liberty without due process of law, as guaranteed by the Fourth and/or Fifth Amendments.

76   If any of the John Doe Defendants did not act under color of state law, then to the extent such Defendant is an agent of the federal government, he/she is liable to Kalberer under the Fourth and/or Fifth Amendments in that he/she abused authority to deprive Kalberer of his constitutional rights to be free from unreasonable seizure and not to be deprived of his liberty without due process of law.

77   As the proximate result of said actions, Kalberer sustained the damages previously set forth.

## THIRD CAUSE OF ACTION

### Deprivation of Right to Freedom of Speech under the First Amendment

78   The allegations of the foregoing paragraphs are re-alleged as if set out in full.

79   The actions of Defendants as alleged herein were an effort to discredit, silence and punish Kalberer for the content and viewpoint of his political speech using the pretext and false allegation that Kalberer was suffering from a mental illness and was subject to involuntary commitment under State of Minnesota Law.

80   Defendants' act of surveillance, intimidation, retaliation and censorship were undertaken with the intent and purpose to silence the political speech of Kalberer and to chill the speech of others that is critical of the government.

81   The actions of Defendants in this respect were committed under color of state law and/or the law of the United States of America and deprived Kalberer of his right to freedom of speech and expression guaranteed by the First Amendment to the United States Constitution.

82   As the proximate result of said actions, Kalberer has sustained the damages previously set forth.

## FOURTH CAUSE OF ACTION

### False Imprisonment, State Law

83   The allegations of the foregoing paragraphs are re-alleged as if set out in full.

84   By there use of force and threats of force as described herein, one or more Defendants – including, but not limited to Palmer – instigated, requested, directed and/or carried out the assault, arrest and detention of Kalberer, thereby imposing restraints upon Kalberer's liberty, without legal justification.

85   Such Defendants did so – either deliberately or negligently – without probable cause to believe that Kalberer had committed any crime or posed a danger to himself or others and without any other sufficient legal excuse.

86   The aforesaid acts of Defendants were beyond the scope of their employment, exceed their authority or discretion and/or were committed wantonly or in a culpable or grossly negligent manner.

87   As the proximate result of said actions, Kalberer has sustained the damages previously set forth. Defendants therefore are liable to Kalberer for actual damages as well as punitive damages, based on false imprisonment as defined by applicable state law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants as follows:

1   That this court award Plaintiff compensatory and/or punitive damages in such amounts as shall be shown by the evidence at trial;

2   That this Court enter an injunction prohibiting Defendants and any officers and/or agents acting on behalf of or in conjunction with Defendants and from unreasonably seizing Plaintiff and/or retaliating against Plaintiff because of Plaintiff's exercise of rights and privileges protected by the Constitution and the laws of the United States.

3   That this Court order Defendants to pay Plaintiff's attorney fees and costs, including expert fees, pursuant to 42 U.S.C. Section 1988: and

4   That this court any and all such other and further relief as it may deem proper.

Respectfully submitted,

*[signature: George H. Kalberer]*

George H. Kalberer, Plaintiff
701 Koester Court; #91
Northfield, MN 55057

Dated : June 25, 2011
email: kalberercapital@gmail.com

