UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

George H. Kalberer,                                    Civil No. 13-1665 (PJS/FLN)

               Plaintiff,

       v.                                    **REPORT AND
                                             RECOMMENDATION**

William Palmer, Tim Dolan,
John Does 1-10, Steven Hoeg,
and Hennepin County Medical Center,

               Defendants.
_____

George H. Kalberer, *pro se*
Darla Boggs for Defendants Palmer, Dolan and John Does
Tiffany Fordyce for Defendant Hoeg
Michael Miller for Hennepin County Medical Center
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on February

14, 2014 on Defendants' motions to dismiss (ECF Nos. 16, 22 and 43). For the reasons discussed

below, the Defendants' motions should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On June 22, 2011, Plaintiff George Kalberer was walking through the Minneapolis City Hall

on his way to represent himself at a Minnesota State Court proceeding against E-Trade. Compl.,

ECF No. 4 at 1. Kalberer stopped at Minneapolis Police Chief Tim Dolan's office to drop off two

letters he wrote to Dolan. *Id.* According to Defendants, Kalberer appeared agitated and was making

bizarre statements about the Minneapolis Police and the FBI conspiring to steal funds from his E-

Trade account. Def.'s Mem. in Supp. of Mot. to Dismiss 3, ECF No. 24. At some point,

Minneapolis Police Officer William Palmer responded to the situation. ECF No. 4. Based on Palmer's observations, he concluded that Kalberer was suffering from a mental illness and that he presented a potential danger to himself or others. ECF No. 24 at 3. Palmer and related John Does took Kalberer into custody and transported him to the Hennepin County Medical Center (HCMC) for a medical evaluation pursuant to Minnesota's Emergency Commitment Statute, which states, in part:

> A peace or health officer may take a person into custody and transport the person to a licensed physician or treatment facility if the officer has reason to believe, either through direct observation of the person's behavior, or upon reliable information of the person's recent behavior and knowledge of the person's past behavior or psychiatric treatment, that the person is mentally ill or developmentally disabled *and* in danger of injuring self or others if not immediately detained.

Minn Stat. § 253B.05 Subd. 2 (2013).

Kalberer argues that the Officers lacked probable cause to take him into custody because he did not pose a threat to himself or others. Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss, ECF No. 51. Kalberer also alleges that excessive force was used to detain him as he was grabbed by force slammed to the floor, jumped on and handcuffed against his will." ECF No. 4 at ¶ 16. Kalberer claims that his back was injured during this process. *Id.* Kalberer alleges that the John Does who transported him to HCMC were acting at the direction of Dolan and others in retaliation for his free market political views, his belief in Constitutional Rights, his criticism of police misconduct and securities fraud. *Id.* at ¶ 17. Kalberer also asserts that "there is clear and convincing evidence that Tim Dolan is guilty of the reckless enforcement of U.S. Securities law." *Id.* at ¶ 45. Finally, Kalberer alleges that Steven Hoeg, the Minneapolis branch manager for E-Trade, "instigated police John Does to set up the assault, seizure, and detention of Kalberer on 6/22/11." *Id.* at ¶ 14.

Kalberer was held at the HCMC psychiatric ward for eight days, from June 22, 2011 through

2

June 30, 2011. *Id.*, Ex. A-K. According to Kalberer, a June 27, 2011 report indicated that "pre-petition screening believes the patient's current condition is such that there is a risk of physical harm to himself and possibly others if he would be released." ECF No.4, citing Ex. E at 4-5.[1] On or about the same day, HCMC staff applied for indefinite civil commitment of Kalberer (a "Jarvis Order"). *Id.* Nevertheless, on June 30, 2011, Kalberer was released after a psychiatrist recommended that HCMC's petition be dismissed because there was "no evidence of harm to self or others." *Id.* at ¶ 34.

Kalberer's amended complaint includes five claims: (1) unlawful seizure under the Fourth Amendment; (2) excessive use of force under the Fourth Amendment; (3) unlawful retaliation under the First Amendment; (4) false imprisonment; and (5) assault. *Id.* at 10-12.[2] These claims are made against three distinct groups of Defendants: Section III A of this Report and Recommendation will address claims alleged against Minneapolis Police Chief Tim Dolan, Officer Palmer and the related John Does; Section III B will address Defendant Steven Hoeg; and Section III C will address the HCMC Defendants and related John Does.

## II. LEGAL STANDARD

---

[1]

The Court has reviewed Ex. E and it does not include a June 27 report. As discussed in Section C, HCMC Defendants' memorandum makes no argument in regard to any finding by HCMC staff that Kalberer posed a threat of harm to himself or others. *See generally* ECF No. 18.

[2]

Kalberer numbers four causes of action in his amended complaint. ECF No. 4 at 10-11. Causes of action numbers one and two are both for "Unlawful Seizure under Fourth Amendment." *Id.* However, Defendants address potential excessive force and assault claims in their motion to dismiss, as Kalberer pleads relevant facts to both claims in the body of his complaint. ECF No. 4 at 3 (alleging that Kalberer was "assaulted and seized"); *Id.* at 16 (Kalberer alleges that he was "grabbed by force [ ] slammed to the floor, jumped on [ ] and handcuffed [ ] against his will."). As such, the Court will address claims for excessive force and assault as well.

To determine the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from the facts pled. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A pleading must contain enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949. In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the court finds that the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss the court may consider extraneous materials that are outside the complaint if such materials are "necessarily embraced" by the pleadings. *Piper Jaffray v. Nat'l Union Fire Insur. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (citing *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1198 (D. Minn. 1996)). Materials that are necessarily embraced by pleadings may include copies of underlying pleadings and documents incorporated by reference. *Id.* In

addition, materials that are public record may be considered in deciding a motion to dismiss. *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

## III. ANALYSIS

### A.       Defendants Dolan, Palmer and the relevant John Does 1-10.

Dolan, Palmer and the related John Does argue that Kalberer's allegations against them should be dismissed because Kalberer fails to state a claim under *Twombly* and *Iqbal* and, even if a claim could be construed, Defendants argue they are protected by qualified, statutory and official immunity. For the reasons discussed below, Dolan's motion to dismiss should be **GRANTED** because Kalberer fails to state a claim against him. However, Kalberer does state Fourth Amendment, First Amendment, false imprisonment and assault claims against Palmer and the related John Does. Thus, Defendant Palmer and John Does' motion to dismiss should be **DENIED**.

#### 1.       Kalberer fails to allege sufficient facts against Dolan to state a claim.

Kalberer alleges that Dolan was involved with a conspiracy to steal money from Kalberer's E-Trade account. ECF No. 4. Kalberer asserts that "there is clear and convincing evidence that Tim Dolan is guilty of the reckless enforcement of U.S. Securities law." *Id.* at ¶ 45. Kalberer contends that "[d]iscovery is necessary to determine if Tim Dolan and other John Does were attempting to help the IRS zero out Kalberer's E-Trade account [ ] in 2011." *Id.* at  ¶ 47. Kalberer appears to believe that Dolan orchestrated Kalberer's detention at HCMC in order to further the alleged E-Trade conspiracy. *Id.* at  ¶ 49.

Kalberer's allegations against Dolan are fundamentally flawed because they are wholly unrelated to the five cognizable claims clearly pled by Kalberer in his amended complaint. To the extent Kalberer believes that Dolan participated in, or facilitated a conspiracy with Palmber, HCMC

and the John Does, Kalberer fails to allege specific facts that—taken as true—state a viable claim on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570 (holding that a pleading must contain enough facts to state a claim for relief that is "plausible on its face."). Rather, Kalberer only makes conclusory allegations against Dolan, primarily related to alleged securities fraud, a claim that Kalberer did not plead in his amended complaint. *See* ECF No. 4. For these reasons, Kalberer fails to state a claim against Dolan. Dolan's motion to dismiss all claims against him should be granted.

### 2.   Defendants Palmer and John Does are not entitled to dismissal of Kalberer's Fourth Amendment and First Amendment claims.[3]

Kalberer brings his claims under 42 U.S.C. § 1983. ECF No. 4. Section 1983 requires plaintiffs to establish that (1) defendants were acting under the color of state law and (2) the conduct complained of deprived plaintiff of a "right secured by the laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants do not dispute that they were acting under the color of state law. *See generally* ECF No. 24. Thus, the question that remains is whether their conduct deprived Kalberer of any constitutional right.

Defendants do not dispute that Kalberer was taken into custody under Minnesota's

---

[3]    Palmer and the John Does contend that they are protected from liability under theories of qualified, statutory and official immunity. Defendants make generalized arguments about the application of each theory. ECF No. 24 at 17-18. The Court notes that the qualified immunity analysis will be applied to Kalberer's federal constitutional claims and the statutory and official immunity arguments will be applied to Kalberer's state claims. *See Martinez v. Cal.*, 444 U.S. 277, 285 (1980) (holding that a California state immunity statute did not control plaintiffs' section 1983 claims because "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 cannot be immunized by state law.") (internal citations omitted); *see also J & A Realty v. Asbury Park*, 763 F. Supp. 85, 88 (D.N.J. 1991) ("The Supremacy Clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law.") (internal citations omitted).

Emergency Civil Commitment statute on June 22, 2011. *Id.* However, Defendants argue that they are entitled to qualified immunity. *Id.* The doctrine of qualified immunity protects government actors from personal liability unless the official's conduct "violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burton v. Martin*, 2013 U.S. App. LEXIS 24929, *17 (8th Cir. 2013). The driving force behind the creation of the doctrine was to eliminate insubstantial claims against government officials prior to discovery. *Anderson v. Crieghton*, 483 U.S. 635, 640 n.2 (1987). Government officials are protected by qualified immunity unless: (1) the Plaintiff plausibly alleges facts that when viewed in the plaintiff's favor, support a finding that the conduct of the defendants violated a constitutional right; and (2) that the constitutional right was "clearly established" at the time of the incidents such that a reasonable officer would have known that his or her actions were unlawful. *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009).

**a.    Kalberer's Fourth Amendment unlawful seizure claim.**

**i.    Kalberer plausibly alleges that he was unlawfully seized.**

Palmer and the John Does argue that Kalberer's Fourth Amendment rights were not violated when they took him into custody because probable cause existed to detain him under Minn. Stat. 253B.05, subd. 2. ECF No. 24 at 12. Kalberer argues that probable cause was absent because there is no evidence or documentation that supports the conclusion that he posed a danger to himself or others. ECF No. 51 at 10. On a motion to dismiss, the record is insufficient for the Court to make any factual determination in regard to the legality of Kalberer's arrest. To survive Defendants' motion to dismiss, Kablerer only needs plausibly allege that his arrest was unlawful under the Fourth Amendment.

7

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1968), *quoting Union P. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891). The Fourth Amendment's protection against unreasonable seizures applies whenever the government takes a person into custody against his or her will. *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir. 1996). A person is considered "seized" under the Fourth Amendment when, in view of all the circumstances, a reasonable person would not feel free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Involuntary civil commitment implicates a person's Fourteenth Amendment due process rights and the right to be free from unreasonable seizure under the Fourth Amendment. *Drozdik v. City of New York*, 2003 U.S. Dist. LEXIS 2336, *10-11 (S.D.N.Y. Feb. 20, 2003) (internal citations omitted). Even where mental illness is suspected or apparent, civil commitment violates an individual's due process rights unless the person poses a danger to himself or others. *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975) ("a State cannot confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family or friends."); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("[T]his Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").[4]

---

[4]      Kalberer does not plead a Fourteenth Amendment due process claim, thus the

Courts also analyze civil commitment under the Fourth Amendment. *See Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1992) ("Although there are few decisions that discuss the fourth amendment standard in the context of seizure of the mentally ill, all have recognized the proposition that such a seizure is analogous to a criminal arrest and must therefore be supported by probable cause."). An involuntary hospitalization passes constitutional muster "if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Drozdik*, LEXIS 2336 at *12.

Here, the governing legal standard is established by Minnesota's Emergency Civil Commitment law which—consistent with fundamental constitutional standards—requires that a person believed to be mentally ill or developmentally disabled also pose a danger to themselves or others before he or she can be lawfully civilly committed. In relevant part, the Minnesota Civil Commitment statute states:

> A peace or health officer may take a person into custody and transport the person to a licensed physician or treatment facility if the officer has reason to believe, either through direct observation of the person's behavior, or upon reliable information of the person's recent behavior and knowledge of the person's past behavior or psychiatric treatment, that the person is mentally ill or developmentally disabled *and* **in danger of injuring self or others if not immediately detained.**

Minn Stat. § 253B.05 Subd. 2 (2013) (emphasis added). The statute does not require that a mentally ill person actually inflict physical harm before being committed, but the law does require "an overt act of some sort that reasonably can be interpreted as a threat or an attempt to harm." *In re Civil Commitment of Olivares-Marquez*, 2002 Minn App. LEXIS 33, *6 (Minn. Ct. App. Jan. 8, 2002) (reversing a civil commitment order where threat of harm element was not met), *citing Enberg v. Bonde*, 331 N.W. 2d 731, 736-38 (Minn. 1983).

---

Court will only analyze his Fourth Amendment unlawful seizure claim.

In this case, Kalberer was seized by Officer Palmer and an unknown number of John Does in Dolan's Office when he was taken to the floor and handcuffed. ECF No. 51 at 9. In their memorandum, Defendants argue that Office Palmer, an "experienced sergeant with the Minneapolis Police Department, evaluated Plaintiff's appearance, behavior, and actions on the morning of June 22, 2011, and determined that Plaintiff was likely suffering from an untreated mental illness and could be dangerous." ECF No. 24 at 12. However, on Kalberer's emergency commitment form Palmer only indicated that Kalberer was:

> Agitated, making statements about a conspiracy involving the MPLS Police and the FBI defrauding Mr. Kalberer's E-Trade account. Mr. Kalberer has been writing bizarre letters to the MPD regarding the same subject claiming the same conspiracy and that the MPD is continually following him. Golden Valley PD indicated Mr. Kalberer has been making accusations of a conspiracy against them along the same lines. They checked his residence and found he is living in a converted office which was described as a "garbage house."

Palmer's Emergency Commitment Form, ECF No. 4-1 at 111. Based on Palmer's direct observations of Kalberer and his knowledge of Kalberer's communications with the Golden Valley Police Department, it was reasonable for Palmer to conclude that Kalberer may be suffering from a mental illness. However, the current record is inadequate for the court to conclude that Palmer had reason to believe that Kalberer posed a threat of harm to himself or others. Indeed, the most Palmer and the John Does can muster by way of argument is that they believed Kalberer "could" be dangerous. ECF No. 24 at 12. The conclusion that Kalberer *could* be dangerous is insufficient under the statute to defeat Kalberer's plausible claim that he posed no such threat. *See In re Civ. Commitment of Leach*, 2008 Minn. App. LEXIS 953, *4 (Minn. App. Ct. 2000) ("Mere speculation as to whether the person, in the future, may attempt to threaten to harm self or others is not sufficient to justify commitment.") (citing *In re McGaughey*, 536 N.W. 2d 621, 623 (Minn. 1995)).

Nevertheless, Palmer argues that even if probable cause did not exist, he and the other arresting officers are protected from liability because their *belief* that probable cause was present was objectively reasonable. It is true that the Eighth Circuit, in the context of qualified immunity for officers making an arrest, has adopted the concept of "arguable probable cause." *Peterson v. Kopp*, No. 12-3776, 2014 U.S. App. LEXIS 10813, *7 (8th Cir. June 11, 2014) (quoting *Ulrich v. Pope County*, 715 F.3d 1054 (8th Cir. 2013). An officer making a arrest is entitled to qualified immunity even if the arrest is not supported by probable cause, provided that the officer's mistake in believing there was probable cause is "objectively reasonable." *Id.* Here, nothing in the record suggests that the conclusion that Kalberer posed a danger to himself or others was objectively reasonable.[5] Absent a concession by Kalberer that the did pose a danger to himself or others, the Court cannot conclude, on the current state of the record, that the arresting officers objectively believed that Kalberer posed a danger to himself or others.[6]

For all of these reasons, the record before the Court does not support Defendants' assertion that the requisite elements of Minnesota's Emergency Admission statute were met in this case. *Compare In re McGaughey*, 536 N.W. 2d 621, 623 (Minn. 1995) (reversing civil commitment of

---

[5]
Defendants cite to the medical records submitted by Plaintiff with his complaint which they say are "replete with notations on Plaintiff's mental state and express concerns that he may be a danger to himself or others." ECF No. 24 at 9. The court has reviewed the pages cited by defendants and fails to find any recitation of facts that would support a conclusion that Plaintiff posed such a danger. At most there are several boiler plate references to "danger to self or others" in reference to the Plaintiff's diagnosis upon admission.

[6]
It may well be that in the context of a future summary judgment motion Defendants will be able to establish that there is no genuine issue of material fact regarding their reasonable belief that Plaintiff posed such a danger. But in the current procedural posture of the case, the Court is unable to make any such conclusion, in light of the facts Plaintiff has plausibly plead.

individual alleged to be mentally ill because "the record does not show by clear and convincing evidence that McGaughey poses a substantial likelihood of physical harm to himself or others.") *and Anaya v. Crossroads Managed Care Sys.*, 195 F.3d 584, 595 (10th Cir. 1999) (holding that detention of individuals for "potential" intoxication violated Fourth Amendment rights absent probable cause to believe that the individuals posed a threat to themselves or others); *with Drozdik v. City of New York*, 2003 U.S. Dist. LEXIS 2336, *15 (S.D.N.Y 2003) (holding that a civilly committed individual's Fourth Amendment rights were not violated **because he was found to be threatening**, and thus likely posed a danger to himself or others, before the civil commitment was ordered). Thus, Plaintiff's claim that he was unlawfully seized is plausible and the first prong of overcoming the defendants' qualified immunity defense is established.

> ii. **Kalberer's right to be free from unlawful seizure was clearly established.**

Palmer and the John Does concede that "[t]here can be no dispute that the right to be free from an unreasonable seizure is a clearly established right." ECF No. 24 at 13. Relying on the argument that at least arguable probable cause supported Kalberer's arrest, Defendants do not address the second prong of the qualified immunity analysis, which requires courts to determine whether a defendant should be shielded from liability based on the reasonable belief that his or her conduct was lawful "in light of clearly established law and the information [that the defendant] possessed." *Id.* In this case, the weight of authority is strong enough to conclude that the right of mentally ill persons to be free from involuntary confinement without a showing of a threat of harm to self or others was "clearly established" at the time Officer Palmer and the John Does took Kalberer into custody.

In 1975 the Supreme Court explicitly held that there is "no constitutional basis for confining

[mentally ill] persons involuntarily if they are dangerous to no one and can live safely in freedom."
*O'Connor*, 422 U.S. at 573. By 1982, the Minnesota Legislature amended the emergency hold statute to include the requirement that an individual must present an "imminent danger of causing injury to self or others if not immediately restrained" before a lawful civil commitment could be enforced. *See Enberg v. Bonde*, 331 N.W.2d 731, 737 (Minn. 1983). Again, absent a concession by Kalberer that he posed a danger of injuring himself or others, the Court cannot conclude that Officer Palmer and the John Does who assisted with Kalberer's arrest reasonably believed that taking Kalberer into custody was legal. As Plaintiff has plausibly pled that his arrest was unlawful, and that his right to be free from such an unlawful arrest was clearly established, his complaint must survive the Defendants' motion to dismiss based upon their qualified immunity.

### b.     Kalberer's Fourth Amendment excessive force claim.

#### i.     Kalberer plausibly alleges an excessive force claim.

Defendants Palmer and the John Does argue that the force used to take Kalberer into custody was objectively reasonable because they had probable cause to arrest Kalberer on the basis that he posed a threat to himself or others. ECF No. 24 at 8. Kalberer alleges that the force used against him was not reasonable because probable cause did not support his arrest and he was grabbed by force slammed to the floor, jumped on and handcuffed against his will. ECF No. 4 at ¶ 16. Kalberer claims that his back was injured during this process. *Id.*

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). To determine if the officers used

excessive force, courts pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade by flight." *Samuelson v. City of New Ulum*, 455 F.3d 871, 875 (8th Cir. 2006) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). "The inquiry into whether [one's Fourth Amendment right to be free from the use of excessive force] was violated requires a balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014).

Although the details surrounding Kalberer's behavior in Police Chief Dolan's office and the nature of the force used are disputed by the parties, the facts pled by Kalberer are sufficient to state a cognizable excessive force claim. As discussed above, the record is insufficient to conclude that probable cause supported Kalberer's arrest under Minnesota's Emergency Civil Commitment statute. Absent the establishment of probable cause, the use of any force to detain Kalberer was objectively unreasonable. Thus, the facts pled by Kalberer state an excessive force claim under the Fourth Amendment and Plaintiff has overcome the first prong of the defendants' qualified immunity defense.

ii.     **The right to be free from the use of excessive force was clearly established at the time of Kalberer's arrest.**

The right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures. *Ngo v. Storlie*, 495 F.3d 597, 604 (8th Cir. 2007). "Moreover, it is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the

security of the officers or the public." *Johnson v. Carroll*, 658 F.3d 819, 827-28 (8th Cir. 2011). At the time of Kalberer's arrest, the law was sufficiently clear for a reasonable officer to know that absent probable cause, it is unlawful to throw to the ground, handcuff and arrest an individual. *Id.* Thus, Kalberer has overcome the second prong of Defendants' qualified immunity defense.

c.     **Kalberer's First Amendment Retaliation claim.**

i.     **Kalberer plausibly alleges that his First Amendment rights were violated.**

Palmer and the John Does argue that Kablerer's First Amendment Retaliation claim fails because probable cause supported his arrest. ECF No. 24 at 15 (citing *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)). Kalberer argues that he was arrested in retaliation for his free market political views, criticism of police misconduct and securities fraud. ECF No. 4 at ¶ 17. Again, because the record is insufficient for the Court to conclude that probable cause supported Kalberer's arrest, he has stated sufficient facts to support a First Amendment retaliation claim.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST, amend I. "The First Amendment creates an open marketplace where ideas, most especially political ideas, may compete without government interference." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008). "The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion." *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781 at *790-91 (1988) (quoting *Thomas v. Collins*, 323 U.S. 516, 545 (1945)). "The Supreme Court has 'long recognized that the right to distribute flyers and literature lies at the heart of the liberties guaranteed by the Speech and Press Clauses of the First Amendment." *Dorr v.*

15

*Weber*, 741 F. Supp. 2d 1010, 1016 (N.D. Iowa 2010) (quoting *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992)).

To survive a motion to dismiss on a First Amendment Retaliation claim, the facts pled by Plaintiffs must be sufficient to raise a reasonable expectation that discovery will reveal evidence that (1) he was engaged in a protected activity, (2) government official(s) took adverse action against Plaintiffs that would chill a person of ordinary firmness from continuing in the activity and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *Delgado-O'Neil v. City of Minneapolis*, 2009 U.S. Dist. LEXIS 123497, *19 (D. Minn. Dec. 3, 2009).

Here, Kalberer engaged in a protected First Amendment activity by seeking to deliver two letters to Dolan and by making comments about an alleged conspiracy in Dolan's office. Palmer and the John Does took adverse action against Kalberer by placing him under arrest. Kalberer plausibly alleges that his arrest was, at least in part, motivated by his attempt to deliver the two letters and because of the comments made in Dolan's office. For these reasons, Kalberer has stated sufficient facts to state a cognizable First Amendment Retaliation claim and has overcome the first prong of Defendants qualified immunity defense.[7]

ii.     **Kalberer's First Amendment rights were clearly established.**

---

[7]      "Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government to freely grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Boardley v. United States DOI*, 615 F.3d 508, 513 (D.C. Cir. 2010) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788 (1985)). Defendants make no argument in regard to the forum where Kalberer alleges to have engaged in protected activity, and thus the Court will not opine on the issue in this Report and Recommendation.

"A citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (citing *Kilpratrick v. King*, 499 F. 3d 759, 767 (8th Cir. 2007)). Defendants only argument on this point is that "the right to be free from arrest after exercising alleged First Amendment speech rights, when the arrest is supported by probable cause is not clearly established." ECF No. 24 at 15. However, as established above, the record is insufficient for the Court to conclude that probable cause supported Kalberer's arrest. Thus, Kalberer's right to exercise his First Amendment rights absent retaliation from the Government under the facts alleged here were clearly established at the time of his arrest and he has overcome the second prong of Defendants' qualified immunity defense on his First Amendment claim.[8]

### 4. Kalberer states valid state law false imprisonment and assault claims against Palmer and the related John Does.

#### a. Kalberer's False Imprisonment Claim

A false imprisonment claim consists of three elements: (1) words or acts intended to confine a person; (2) actual confinement; and (3) awareness by the person that he or she is confined. *Blaz*

---

[8] *See also Peterson v. Kopp*, No. 12-3776, 2014 U.S. App. LEXIS 10813, *17-18 (8th Cir. June 11, 2014). In *Peterson*, the Eighth Circuit reversed a district court's grant of summary judgment dismissing a plaintiff's first amendment claim that was remarkably similar to Plaintiff's claim here. *Id.* In opposition to Defendant's summary judgment motion, Plaintiff presented affirmative evidence that he was pepper sprayed by the police in retaliation for criticizing a police officer's conduct and for asking for his badge number (which all parties agreed constituted the exercise of First Amendment rights). *Id.* The facts here are even more compelling. Plaintiff has plausibly pled that he was arrested in retaliation for exercising his First Amendment rights and—because of the procedural posture of the case—there is no evidence to the contrary. Moreover, in *Peterson*, the Eighth Circuit found that Peterson could proceed on his First Amendment retaliation claim even though it concluded that probable cause supported his arrest. *Id.* at *9.

*v. Molin Concrete Prods. Co.*, 309 Minn. 382 (Minn. 1976). Defendants concede that Kalberer has

stated a viable claim for false imprisonment, but argue that the claim should be dismissed because

the officers who took Kalberer into custody had probable cause to do so under Minnesota's

emergency hold statute. ECF No. 24 at 16. As discussed above, the record is inadequate for the

Court to conclude  that the Officers had probable cause to arrest Kalberer. Palmer and the John

Does' motion to dismiss should be denied.

### b.    Kalberer's Assault Claim

The same facts that support Kalberer's excessive force claim also support his assault claim.

Minnesota law defines assault as "(1) an act done with intent to cause fear in another of immediate

bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon

another." Minn. Stat. §609.02. Because Kalberer alleges that he suffered an injury to his back during

the arrest process, he has pled sufficient facts to state a claim for assault. Palmer and the John Does'

motion to dismiss Kalberer's assault claim should be denied.

### c.    Defendants are not entitled to statutory or official immunity on Kalberer's state law claims.

Palmer and the John Does argue they are immune from suit on Kalberer's state law claims

under statutory and official immunity. The statutory immunity provision set forth in Minn. Stat. §

253B.23, subd. 4 states:

> All persons acting in good faith, upon either actual knowledge or information
> thought by them to be reliable, who act pursuant to any provision of this chapter or
> who procedurally or physically assist in the commitment of an individual, pursuant
> to this chapter, are not subject to any civil or criminal liability under this chapter.

Bad faith is defined by case law as the commission of a "malicious, willful wrong." *Mjolsness*, 524

N.W. 2d at 530, (citing *Rico v. State*, 472 N.S. 2d 100, 107 (Minn. 1991)) (holding that bad-faith

conduct is the intentional wrongdoing of a wrongful act without legal justification or excuse, or the willful violation of a known right).

Palmer and the John Does rely on two cases. *See Losen v. Allina Health Sys.*, 767 N.W. 2d 703, 709 (Minn. Ct. 2009) (holding that the Minnesota Commitment and Treatment Act "encompasses the good-faith decision whether to place an emergency hold on a proposed patient, even if the result of that decision is that no hold is placed."); and *Mjolsness*, N.W. 2d 524 at 530 (affirming statutory immunity on a Summary Judgment appeal in favor of an individual who called the police out of concern for a friend who indicated that he was suicidal and that he had access to guns). In both *Losen* and *Mjolsness*, the court held that defendants were entitled to summary judgment because the plaintiffs failed to produce evidence to support their contention that the Defendants did not act in "good faith," as required by the immunity statute. In this case, discovery has not commenced, and thus there is no record on which the Court can conclude whether Palmer and the John Does were acting in good faith. Defendants' motion to dismiss on statutory immunity grounds should be denied.

Palmer and the John Does also argue that they are protected by common law official immunity. ECF No. 24. The official immunity doctrine provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he his guilty of a willful or malicious wrong." *Elwood v. County of Rice*, 423 N.W. 2d 671, 676 (Minn. 1988) (internal quotations omitted). Official immunity is a state common law doctrine that remains distinct from qualified immunity. *Rico v. State*, 472 N.W. 2d 100, 107 (Minn. 1991). However, both doctrines further the same purpose in that they are designed to "prevent the threat of personal liability from inhibiting public officers in the effective

19

and independent performance of their duties."*Id.*

In this case, it is clear that the decision to take Kalberer into custody was discretionary. However, Plaintiff has plausibly alleged that he was taken into custody in violation of state law, and the 4th Amendment.  Whether the arresting officers acted "in good faith", and whether they acted "willfully" and "without malice" are fact questions on which there is currently no evidence before the Court.  *See Kelly v. City of Minneapolis*, 598 N.W. 2d 657, 666 (Minn. 1999) (noting that a finding of malice requires nothing more than the intentional doing of a wrongful act with out legal justification) (internal citations omitted).  Defendants' motion to dismiss based on official immunity should be denied.

**B.** **Kalberer fails to state a claim against Steven Hoeg.**

Steven Hoeg is the branch manager for E-Trade's Minneapolis office. Kalberer alleges that Hoeg "instigated police John Does to set up the assault, seizure, and detention of Kalberer on 6/22/11." ECF No. 4 ¶ 14. Kalberer alleges no further details about Hoeg's "instigation." Not only is Kalberer's allegation against Hoeg conclusory, it is unrelated to any of the elements necessary to prove the five cognizable claims pled in Kalberer's amended complaint. Hoeg's motion to dismiss should be granted.

**C.** **Defendant Hennepin County Medical Center and related John Does**.

Finally, Kalberer alleges Fourth Amendment unlawful seizure and false imprisonment claims against HCMC and the related John Doe Defendants. ECF No. 4. Defendants HCMC and related John Does argue that because HCMC is run by Hennepin County, it is protected from suit as a municipality under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), and by qualified and statutory immunity. ECF No. 18. For the reasons discussed below, the Court agrees

20

that HCMC and related John Does are protected from suit by *Monell* and therefore does not need to reach their statutory and qualified immunity arguments.

A municipality, like a county, may be liable under § 1983 where a policy or custom of that entity caused the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Plaintiff here fails to identify any policy or custom of Hennepin County or HCMC that he alleges caused the constitutional violations.

Under certain circumstances, a municipality's failure to train its personnel may be sufficient to establish such a policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). To survive a motion to dismiss, Plaintiff must plead sufficient facts to show that (1) HCMC's training practices were inadequate, (2) HCMC was deliberately indifferent to the rights of others in adopting those training practices, (3) HCMC's failure to train was a result of deliberate and conscious choices it made and (4) HCMC's alleged training deficiencies caused the Plaintiffs' constitutional deprivation. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). Here, Kalberer does not allege that HCMC's failure to train its staff was inadequate or that a lack of training caused him to suffer a constitutional deprivation. ECF No. 4 at 5-7.

For the foregoing reasons, HCMC's motion to dismiss should be granted.

## IV.  CONCLUSION

For the reasons discussed above, the Court concludes that (1) Kalberer has stated valid unlawful seizure, excessive force, First Amendment retaliation, false imprisonment and assault claims against Officer Palmer and the related John Does; (2) Kalberer fails to state a claim against

Defendants Dolan and Hoeg; and (3) Kalberer fails to state any valid claims against the HCMC

Defendants and those John Does related to the claims against HCMC.

## V.  RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.     Defendants Palmer, Dolan and John Does' motion to dismiss (ECF No. 22) be **GRANTED in part** and **DENIED in part** as follows:

   A.     To the extent Dolan seeks to have all claims pled against him dismissed, the motion should be **GRANTED**.

   B.     In all other respects, the motion should be **DENIED**.

2.     Defendant Steven Hoeg's motion to dismiss (ECF No. 43) should be **GRANTED**.

3.     Defendant Hennepin County Medical Center's motion to dismiss (ECF No. 16) should be **GRANTED.**


DATED: July 31, 2014                    *s/Franklin L. Noel*
                                        FRANKLIN L. NOEL
                                        United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before August 15, 2014, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 15, 2014** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.